Good morning. My name is Steve Skinner and I represent the Appellant National Union in this matter. The question before the Court today is whether a first-level access insurer, with the explicit approval of the named insured, be permitted to avoid its coverage obligations for numerous abuse claims simply by bundling those claims into one occurrence. Ordinarily, one would expect the insured to oppose any effort by an insurer to limit the available coverage for claims. However, in this case, Knowledge Learning and co-defendant Discover share a common interest, and that is to limit their respective financial obligations associated with the Florida abuse claims as they've come to be known. Counsel, just so I can understand what you're saying, just the structure of this deal is KLC says it has $51 million in package coverage, and it gets that coverage by entering into an insurance policy with Discover as the primary, correct? Well, it's always a dangerous thing to... No, I mean, that's the first thing it gets. I'm trying to understand the contractual arrangement between KLC, Discover, and KLC National Union. The tower of coverage, if you will, Your Honor, is Knowledge has decided to self-insure for the first half-million dollars per occurrence. It has purchased an insurance policy from Discover, which I've referred to as a first-layer access policy, given the significant SIR. That provides a million dollars of coverage per occurrence with a $5 million per location aggregate. Once we get past that retained limit, which is significant to the second-layer access policy issued by National Union, there is then a $50 million limit available under the National Union policy. And the contractual parties are whom? The contractual parties are Knowledge Learning Corp. with Discover and then Knowledge Learning Corp. with National Union. And the occurrence clause that we're trying to understand here is in the Discover policy? Yes, there is a specific endorsement in the Discover policy that addresses sexual... I'm familiar with it. It's in the Discover policy. Correct. And then National Union piggybacks off that policy, or does it have... In other words, does the Discover occurrence definition control the National Union scope of coverage? It isn't that it controls it, but there is a similar provision in the National Union policy. And it's articulated in the same terms? Yes. Okay. And who drafted the... So National Union drafted its provision and Discover drafted its occurrence provision? You know, unfortunately, that has not been determined in this. We don't know that. Okay. We don't know who the drafters were other than we're here on the Discover policy. Okay. And so just to make sure, I'm just trying to follow on from Judge Fisher's questions just to make sure I understand. If it turns out that the Discover policy no longer covers because all of these episodes that took place at the same location involving the two employees and the several different children, if that turns out to be a single occurrence, that means that the coverage bumps over to National Union to pick up what's left because Discover is no longer obligated to cover? Is that what happens? Yes, Your Honor. There was the... I believe it's the Estrahausen case that already went to trial. And in that case, there was a $2 million-plus verdict that was ultimately settled. And through the resolution of that case, at least a one-occurrence limit and SIR would have been exhausted. So if that is correct, if the determination is there's one occurrence, then the obligation... And if that happens, it's pretty clear that Discover is advantaged because it no longer has to cover for any of the remaining incidents with these additional children. Is it also true, then, that knowledge learning benefits because it doesn't have the half-a-million-dollar self-insure? It's a half-million dollars per occurrence. So knowledge learning would benefit to the extent that it would no longer have any responsibility for the remaining Florida claims on the SIR side. Because it's already met its self-insured obligation.  One occurrence. But if there are multiple occurrence, then it will have additional responsibilities towards those claims. And with respect to Discover, it also would avoid the opening up the aggregate limits relating to this location, which is an additional $4 million. And it all comes down to what the phrase, a series of related acts, means in that third sentence? Well, I suppose that is the simplest articulation of the issue. However, I think it really is important to focus on the definition of occurrence as a whole. And there's, I think... Well, I understand that. We've got to look at the whole thing. But when we really get down to the nub of it, it's what does that mean in the third sentence. And I quite agree with you. You can't understand that without looking at the entire paragraph. Correct. And Oregon, of course, follows, Oregon Courts follows a rule of construction which involves a three-step test, the first being a plain meaning approach. And under that, in assessing the plain meaning of the occurrence definition, we would assert that you do have to look at the entire definition, that there's a real risk of analyzing phrases, words, in isolation, when there is a three-sentence definition of occurrence that seems to build as you work through it. I had a little problem. And maybe you can introduce your answer whenever it works into your argument before you run out of time. You gave an example, a hypothetical, which involves an employee abusing an infant repeatedly over several months. That's in your brief at page 17. And I'd like you to explain how that hypothetical and your other hypotheticals make use of all three sentences, particularly sentences two and sentence three. As I interpreted your hypothetical under your interpretation, the coverage of sentence three would already be provided under sentence two, so you're basically rendering the third sentence irrelevant. And on the other hand, the Scover's argument, or KLC's argument, would have some overlap between the second and third, but would make use of all three sentences in their reading of it. I think I understand the question. Our view of the definition is that sentence one defines the type of act covered, and that is, of course, abuse and molestation, and that is the starting point since this is an endorsement that provides coverage for molestation and abuse. The second sentence groups all injuries alleged by one victim to one occurrence, regardless of the number of perpetrators or actors. And or acts. Or acts, correct. And sentence three precludes a single victim from parsing out, and I'm using the words that Magistrate Stewart used in her findings or proposed findings, out related actions by one or more perpetrators into multiple claims. And I think with respect to the. Before you slide off that, the second sentence is arising out of acts, plural. Correct. Of abuse by one person or two persons against a single person. So that covers multiple acts against by one or more perpetrators against a single victim. Correct. Okay. And then the third sentence talks about related acts of abuse being treated as a single occurrence. So acts is plural in both sentences. That is correct. However, the way I would propose those sentences be considered is sentence two deals with the injury, the nature of the injury. It deals with bodily injury. It deals with personal and I believe advertising injury. Sentence three deals with the acts, and that is the focus. And I think one thing to keep in mind is we're dealing with policy that is being sold potentially across the country in different jurisdictions that may define occurrence differently. Some may focus on the act. Some may focus on the injury. That is the function of sentences two and three. They're coming at the issue from two different directions. One is from the injury perspective. The other is from the act. However, we would submit that there is no basis to conclude that or read into that the notion of multiple claimants, which isn't mentioned anywhere in the definition, of course. So your argument is that sentence two says multiple injuries, that's one occurrence. Sentence three says multiple acts is one occurrence. Correct. All with respect to the same victim. Yes. And sentence two refers, does it by virtue of injury. Sentence two does it by virtue of acts. Correct. And that was Judge Stewart's conclusion. Correct. And I think it's important to note. Which was not Judge King's answer. No question. Which is why you're standing here. That's right. We've got at least two judges here in this district that at least do not agree as to what this definition means. Even if one is to conclude that sentence three goes far enough to capture multiple claimants, which of course those words aren't found in there, it's our belief that the interpretation would still fall short with respect to these six Florida claims. It's interesting that in the district court ruling on this, that Judge King really didn't engage in any sort of analysis of the factual application of facts to his definition or his interpretation of this definition. That the Florida claims involve a series of relationships or related acts, which of course is necessary to bring it within the definition of occurrence and constitute one occurrence. The appellees argued essentially that because it involved one or two of the same perpetrators that occurred in the same classroom and occurred over the same policy year, that that constitutes a series of related acts and therefore it's one occurrence. We spent a fair amount of time in our briefing setting forth the particular allegations in the underlying complaints. And I'm not going to repeat those here other than to state that there are no allegations that these assaults were performed by the same person. In fact, the allegations are that one or both of them were assaulting these children. There were no allegations that these physical or mental assaults occurred at the same time. And the allegations were that there was both physical and emotional assaults taking place over time. So we would submit that even if you, under the plain meaning analysis, that the factual record certainly doesn't support the conclusion that this is a series of related acts. Well, the related, I mean, if your argument is only in relation, relation means so many things. I mean, obviously they're related in certain senses. This is taking place in the same place, same room, same perpetrators. I mean. And by your question, you raise the issue that because there are so many ways to interpret what's related, it takes us into the second step of the test the Oregon courts have adopted, which is the context test. And we would submit that in engaging in that analysis, one would have to conclude that there is no reference to multiple claimants, and it was not the intent of the drafter when looking at the policy and the endorsement as a whole, to conclude that there was any intent to capture multiple claimants in that. Okay. We've taken now almost 15 minutes to try to figure out what three sentences mean. Let's hear from the other side, and we'll give you a chance to respond. And one question I'd like you to think about is you opened with the notion that it's counterintuitive for Discover to be on the same side as KLC in this case. You make that argument in your brief when you talk about assuming we get down to get past the plain meaning and ambiguity. I'd like you to explain the different outcomes. If your interpretation is correct versus their interpretation, if we're applying Oregon's law of trying to make the best outcome be measured in terms of the effect on the insured, basically it construes it against the drafter. You say that we don't know who the drafter is, but your argument, as I understand it, is that if KLC prevails on this one or Discover, that they would be worse off than if you, the National Union argues, that they're worse off under their construction if we didn't have this particular dispute where Discover gets a chance to put a cap on its liability and let's stick you with the whole. Why don't you feel free just to answer right now rather than having to wait? I mean, we might as well let's keep the clock going and answer the question and see where it takes us. I'm sorry. All right. And it is correct that if we conclude that there are multiple occurrences, then Discover and Knowledge will continue to have financial obligations with respect to the remaining Florida claims. And I think from an excess insurer standpoint, National Union has the right, and I would submit the obligation, to ensure that the retained limit that is reflected in the premiums that it charges and the underwriting process that it goes through are properly satisfied with respect to claims. And then going forward, I think that is fairly reflected to the extent there are policy applications in the future. But it would certainly benefit National Union to see that the retained limit is properly exhausted. Counsel, just so that I understand the situation. So if, if we were to affirm the district court, then the victims, the six victims who have filed in Florida would be, the only insurance money they could collect would be limited to $51.5 million. Is that correct? In terms of the 55.5? Is it someplace between 50 and $55 million? Yes. It's roughly in the ballpark. Now, if we were to reverse, in favor of your client, then each of the victims could, could, could potentially recover up to between 50 and $55 million. Is that right? Well, I think the easier way of looking at this is not in terms of the whole amount of insurance money. It would be how the occurrences are treated. And with respect to each occurrence, there would be available $1.5 million between knowledge and discover and then 50 on top of that from, from the. Okay. So $51.5 million per victim would be available. And I say that with the understanding that the National Union policy is, is a, is an aggregate policy. So every time you pay somebody. I'm sorry, you had a, you had a location, you had a location cap of, of, of what? Was it $4 million, $5 million or? Yes. But our policy, every time we pay a, every, every time we pay a dollar and we've already paid some on the Estrahausen case, that would reduce the available limits for the next claimant on the National Union policy. So what's National Union's total exposure at the, at the facility in Florida? $50 million. Oh, okay. So it is, okay. But it has been reduced with each. So each claimant wouldn't have $50 million. But realistically, given what was recovered in the first suit, just, I mean, I have no idea about the merits of the underlying lawsuits. Your calculation is you're better off paying the excess for these individual lawsuits than being on the hook for all of them. We're better off seeing that the insured and the, the primary layer insurer is, is required to live up to its contractual obligations. So you've got, you've got six claimants. Each of which have $1.5 million between your obligations being triggered. That's correct. Okay. Thank you. Got it. Okay. We've now taken you over, but we will give you a chance to respond. May it please the Court. My name is Tim Snyder. I'm here for Kindercare and Knowledge Learning. And I'd like to start where Judge Fletcher started. That is what this case is about. This case is about what does the phrase a series of related acts of abuse mean. And the Oregon Supreme Court, I'm going to push back a little bit on some comments. The Oregon Supreme Court has said, set forth a very rigid analysis. They say you look at an undefined phrase, which here is the sentence, series of related acts of abuse, and you have to decide is that phrase, standing alone, susceptible to two different competing meanings. And if it is, then you move to step two and you start considering, well, what does that sentence three in this case mean in the context of sentence one and two. And what we don't have here is neither side has put forth competing interpretations of the language a series of related acts of abuse. The parties have agreed that a series, as Judge King defined it in his opinion using dictionary definitions, which is what Oregon courts do, that series means a group or number of related or similar things in temporal succession. That is a plain meaning, as does related acts. Related means associated or connected. And we've cited the court to cases in other circuits that have looked under insurance policies as to what does related acts mean. And they've uniformly held related acts is very broad, covering a broad range of logical or causal connections, but it has a plain meaning. But even Judge King didn't stop there and say, oh, well, now we know what that means, and so that's the end of the game. That's true. That's true. Judge King got to the right result. He went to the next step, which is look at the context. He did. He got to the right result under context. I submit he didn't have to go there. Right. Okay. And I'll give you just an example. You know, related is not self-defining. There's a famous story, perhaps apocryphal, of a philosophy professor throwing chalk at the chalkboard. The chalk falls to the ground, and he says, I have just affected the coastline of China, the point being that everything is interrelated. Now, whether he affected the coastline of China, I have no idea, but it's a very common philosophical point that related relationships are very, very broad, and so related is not self-defining. Okay. Well, there is no plain meaning outside of context. Okay. Well, and I'll move to context then, because it appears that's where the court is. You're better off in context. Okay. I've parsed this, and I would have trouble writing an opinion that said this is all, even when the district court didn't get there. Right. So when you construe that sentence in the context of the other two sentences, Judge King did get it right, because Judge King, applying the plain meaning series of related acts of abuse, concluded that that phrase could encompass multiple victims, and that it was improper. It could, but how do you respond to Judge Stewart's analysis? She says the second sentence, which says, all bodily injury and personally advertising injury arising out of acts of abuse or molestation by one or two more persons acting together will be deemed a single occurrence. Next sentence. A series of related acts of abuse or molestation will be treated as a single occurrence. Judge Stewart says the first sentence is designed to tell us that multiple injuries, that's going to be the same, that's going to be same occurrence. And then third sentence, says Judge Stewart, multiple acts, that's going to be multiple, that's going to be a single occurrence. And she says that doesn't tell us one way or the other about different individuals, and because those two sentences are fully consistent and non-overlapping, if you say the first one's talking about injury, and a series of injuries, and the second one's talking about a series of acts, therefore, it doesn't tell me anything. And now that just leaves me to conclude that if it's a different victim, that's a different occurrence. There's a certain plausibility to that. How do you respond? So I'd ask the Court to, first of all, two responses. Look at the entire endorsement. The endorsement in the first paragraph, we're talking about paragraph two, which is the definition of an occurrence. But the first paragraph, it says, what does this insurance apply to? What's the grant of coverage? It only applies to bodily injury or personal and advertising injury. So that qualifier in the second sentence is assumed, that you're going to have in every case where there's an abuse occurrence, you're going to have bodily injury or personal or advertising injury, or you don't even get to deciding how many deductibles and how many occurrences we have. So that's one response. The second response is both sentences, as Judge Fischer pointed out, both sentences use the word acts. Sentence two talks about acts of abuse by one person or two or more acting together is a single occurrence. And then sentence three adds a slightly different analysis of acts, saying a series of related acts of abuse is also a single occurrence. And so under sentence one, or sentence two, two acts of abuse don't necessarily have to be related if they're against one person. They just, acts of abuse against one person, that's the one victim rule, so to speak, that national union is asking for application of in this case. The third sentence doesn't have that. And Oregon law has another principle that Judge King noted as persuasive, that you can't add words that are left out. And in this case, the third sentence doesn't include the language towards any one person. It's not. Kennedy, you just asked us to insert bodily injury. I'm sorry? You asked us to insert bodily injury to the third sentence. Well, bodily injury would, comes from the grant of coverage in the initial paragraph, and then you're deciding how many deductibles, how many limits of insurance do we have  So if you, if you insert words like national union is asking be done in this case, you violate the rule against inserting words that aren't there. And you can see that if you look at the subsequent policy history here, where in a subsequent policy year, the phrase towards any one person was inserted into the third sentence and then it was later removed. So clearly that was something that could have been done and was done in a policy period subsequent and was later taken out. That reflects. Do we have any reason or explanation why it was put in and then taken out? We don't. But we, all we know is that that was a, that that was, based on the record, that that was an option. That that language, to clarify, if it was intended to be towards any one person, was inserted in for one policy period. So if you insert the language towards any one person, as national union suggests, you have another problem, which is now you have a, the third, the second sentence, which doesn't require related acts, swallowing the third sentence, which requires a series of related acts towards any one person. So you're going to have a situation where, if you add those words, you've created another problem, which Judge King avoided, in his opinion, by applying the plain  I'm trying to work with Judge Stewart's analysis and see why it's wrong. Her analysis of the second sentence is, all bodily injury, I'm going to put aside advertising injuries because that's not at issue here, all bodily injury arising out of acts of abuse by any one person toward any one person is a single occurrence, and the word related is not there, which I think means, okay, I'll just take a simple one, we've got two people acting, which is what's happening here, against one person, all injuries by those two people against that person, that's a single occurrence, and I don't care about any argument about related. The first day I might hit him with a baseball bat, the second day I might feed him arsenic. Related, unrelated, I don't care. That's true. Second sentence, if it's a single, if it's a series of related acts, and now we introduce related acts, that's also a single occurrence. So the first one focuses on injury, and you know there's no requirement beyond the fact of injury, no relatedness requirement, and the second sentence, if we're talking about acts, those have to be related. Now, why are those sentences not independently meaningful, and it all has an understanding that we're talking about against the same victim? You don't get to worrying about whether, how many occurrences you have until you have bodily injury or personal or advertising injury arising out of an act of abuse. So that language doesn't add anything to the second sentence, because you're not into how many occurrences do we have until you have somebody committing an act of abuse or two acts of abuse or ten acts of abuse, and then the court and the parties and the policy holders are trying to figure out how many occurrences do we have here. So I don't think that that injury versus acts analysis in distinction between two sentences works, because to get there, you have to have an act of abuse, and you have to have bodily injury. And so the question is, are we talking about a one-victim rule and reading words into the Are we reading that into the policy? Yeah. What do we do with, and this is kind of a common sense to me, and I don't think common sense has to be put entirely to one side, even though this is an insurance policy. I'm working at a daycare center, and on Monday, I take a child into the room and I abuse the child. The next Monday, I take a different child into the room and I abuse that child. Common sense says those are two different occurrences. That's just ordinary language. Now, insurance companies in their policies can define words however they want, but I start out with a common sense of occurrence that I just described two occurrences to you. Well, it's true that common sense of what is an occurrence or not an occurrence is when you have an insurance policy that defines it, you kind of throw that out the window. And different courts reach different conclusions. This is a very common issue. Are multiple victims one occurrence? Are multiple victims multiple occurrences? And both sides are acting in their economic interests. And I've just hypothesized, and I'm not sure about the underlying allegations, so I've just hypothesized that these two different victims were victimized in the same room by the same person, but at different times. So it's not two victims being victimized in the same room at the same time. Right. And in your example, that would clearly come within the definition of a single occurrence under the second sentence, because you have one abuser, one person committing acts of abuse against, oh, sorry, you had two victims in your example. Yeah. So that's a closer question. Do you have a series of related acts of abuse? You have the same teacher. You have the same classroom. Under some definition of related, of course they're related. Right. They are related. Yeah. But under common sense, I think I just described two different occurrences. Two different kids, two different days. Neither kid was in the same room at the same time. And we're operating in a policy that says a series of related acts of abuse. I think your example is a closer question than what we have in these six Florida lawsuits, where you have allegations of a pattern of yelling and being rough with children over a year-long period. And the allegations include some specifics about many instances of tossing into cribs and being rough with children and then yelling. And then they have very vague allegations of this pattern of abusive conduct. And the overarching allegation of the center director who's turning a blind eye to this. This clearly is not as close of a case as the one you've, I think, set up in your example. Okay. So just so let's suppose that the six victims, we're dealing with six victims over a six-week period. Every Monday this teacher selects a different child, does the identical activities. So everything is related except there's a change of victim and there's a one-week interval. So if you are correct and it's aggregated as a single occurrence, you get six separate lawsuits. It's a single occurrence. So what KLC has, therefore, is coverage for the six complaints, which constitute one occurrence. KLC puts up its $500,000. Correct. Discover puts up its million dollars. That's true. Okay. And then the coverage for the potential liability of those six lawsuits is what National Union has to kick in at $50 million. That's correct. Okay. Now, if they're correct, the coverage would be each one of them, KLC would have to come up with $500,000. That's correct. Discover would now have to come up with six $1 million payments. Well, five because there's an aggregate. And then National Union would be on the hook for...  $50 million. So in the process of construing it your way, what KLC is, it's having to pay $500,000 times six for its self-insured retention, but it's also getting $5 million out of Discover instead of $1 million out of Discover. So it has to make up under your construction. It has to look to National Union to make up the differential in terms of what it's getting from its insurance. So Discover comes out of this smelling like a rose. KLC winds up paying more. No, it winds up paying less. Right. And National Union winds up paying the most. If it's maximum, they have $50 million per occurrence, $50 million aggregate. So they're kind of paying. The question is, do they respond now in defending kinder care in these underlying lawsuits? I've gone over my time, and I meant to save time for Discover's counsel, but we may be out. Okay. Just so Discover counsel doesn't feel cheated, would you like five minutes? Okay. And he'd better buy you a very nice lunch. Thank you again, Your Honor. He's got a few million dollars to play with. It comes out right. May it please the Court. I'm Brian Hickman on behalf of Defendant Appellee, Discover Property and Casualty Insurance Company. I'll jump straight to what appears to be the heart of this for Your Honors. The context argument in how to deal with Judge Sullivan's interpretation of the occurrence paragraph, I think that's answered as a matter of law by the Oregon Supreme Court's decision in Holloway. Holloway interpreted a phrase, your rights or duty under this policy may not be transferred without our written consent. And the argument from the insurer was that this was unambiguous language, your rights or duties may not be transferred. And the response was that, well, it doesn't specify whether it's your pre-loss rights or your post-loss rights. Oregon Supreme Court in Holloway said this is an unqualified sentence. You can't read a limitation into it. It doesn't imply a limitation. There's none there. Therefore, it applies to both pre-loss and post-loss rights. In the context of this case, a series of related acts of abuse does not specify whether it applies to a single victim or to multiple victims. As written, it's an unqualified phrase. Accordingly, you can't add language to it. That's based on Holloway. There's also an Oregon statute, which Holloway was based on, that says you cannot add terms to a contract. So I believe that's the way you have to answer Judge Sullivan's interpretation of Judge Stewart's. I apologize. And going further into the context, I think as Judge Fischer observed, if you add this language to Sentence 3 and then you say a series of related acts of abuse towards any one person shall be deemed a single occurrence, then Sentence 2 swallows Sentence 3, and Sentence 3 does not have any meaning. And that's a violation of Oregon law under the Hoffman decision. So if you get to the context level, Holloway and Hoffman answer it as a matter of law. You can't just add language to Sentence 3. The argument is that the whole paragraph embodies a one-victim-per-occurrence limitation. Simply not supported by the language. Take Sentence 1. It says occurrence means an act or a threatened act of abuse or molestation. Well, you could have one act that injures multiple victims. So Sentence 1 doesn't embody a one-victim limitation. You could have a teacher that yells at an entire classroom, exposes himself to an entire classroom. Under Sentence 1, that one act is an occurrence. Just because there's multiple victims doesn't change it into 20 or 30 occurrences. The only reference to the number of victims is in Sentence 2. And reading this honestly, there's no way you can import that one-victim language that's in Sentence 2 and add it to both Sentence 1 and Sentence 3. Yeah, this is a hard case in a whole lot of ways. And I'm struggling with what seems to me an intuitive reading of occurrence. When the victims are victimized at separate times with the other victims not being present. Because our intuitive, obvious understanding of occurrence, I think, without some specialized definition written into the policy, those are two different occurrences. On the other hand, your example of the teacher exposing himself to an entire classroom of students all at the same time, our intuitive understanding is that that's a single occurrence even with multiple victims. And this language doesn't really tell us how to distinguish between those two situations. I believe it does. Because if you have multiple acts that are related and occur in a series, then it's one occurrence. That's the plain language of Sentence 3. But related is such an elastic term, it doesn't really tell me very much. Well, it is a broad term. It's what the insured contracted for was a broad interpretation of the occurrence. And so if you have a series of related acts, that's the language the parties agreed to, it ought to be enforced. And, yes, related can encompass a large variety of connections. And I think in the right case, you could have a much closer question on whether the acts are related. Here, if you go look at the complaints, particularly the second through sixth complaints in the Florida claims, they're mirror images. They're exactly the same. There's an additional plaintiff and a few because of the number of parent plaintiffs. But the allegations are the same. They all allege a pattern of routine physical and emotional abuse in this out-of-control classroom. Yeah, although, I mean, one of the answers, and we're trying to figure out what this means, if I take my hypothetical of different children, different times, your hypothetical of one time, many different children, in my hypothetical, it's really different acts because I threw this child into the crib on Monday. I threw that child to the ground the following week. I mean, I took two separate acts to inflict the two separate injuries on the two different, quote, occasions. In your example, it's only one act. That is to say, affecting everybody pretty much equally. That is to say, he exposes himself in front of the room, many victims to the same act. And so what do you do with a situation where what we're talking about is discrete actions, whether related or not, all lead to one side, affecting the individual children? We're not talking about exposure to their children. We're talking about various forms of abuse. I don't know, throwing them to the cribs, not feeding them, and so on. And each act is an abusive act toward that particular child, and they are different acts. Whether related or not, they're different acts. I agree, and I think that's the purpose of this incurrence definition, is to, in certain circumstances, combine multiple acts into a single occurrence. Okay. Thank you. Thank you. Would you like two minutes? Briefly. I think we may make too much of the fact that the complaints contain similar allegations. They were filed by the same law firm or a law firm that was cribbing off the successful complaint. And this is an unusual case in that we are relying on allegations as opposed to the actual facts. It's just the agreement that the parties entered into at the inception of this dispute. With respect to adding terms into this, we would submit that the knowledge and discover are actually trying to introduce the concept of multiple claimants into the definition of occurrence, and it doesn't exist. And it certainly could have been written in there, had they been so inclined. The concept of numbers and numerosity is engaged at some point in the definition. So discover, to the extent it was including this language in its policy, had the ability to address numerosity, and they chose not to with respect to the number of claimants. And I don't want to belabor anything with respect to the authority that we cited from other jurisdictions, but this is not the first time this dispute has come up with respect to how to treat the occurrence issue with respect to sexual molestation or abuse claims. And in our briefing, we cited a number of cases, and I think what's fair to say is the weight of that authority suggests that in the absence of very specific policy language where it does bundle claimants, we're going to treat individual claims as individual occurrences. But Oregon seems to have a very heavy emphasis on the language of the specific contract. So how many of those cases you cite have essentially the same languages here? None of them have the identical language. My only point is that they, well, and I would submit that almost all of the jurisdictions that came to those conclusions had similar rules of construction that they're going to rely on the language of the policy. My only point is that these arguments have been made before, and what I would submit is that when we start getting into deciding cases based on what is in the financial interest of the insured under any given scenario, that's not appropriate. Really, it should come back to the language of the policy. No, I wasn't, although, I mean, that was an argument raised in your brief. So that's why I was pursuing it. The argument that if you get down to the, well, at least I thought it was, there was what happens if you get down to where you have to basically step back and look what was the purpose of the parties in getting into it, the extrinsic evidence. This one goes through in a normal analysis, and then you resort to Oregon's rule that says if you go through your stage and you can't rule out one of the interpretations in the context portion, then you have to go to the next one as to, well, how do you effectuate what's best for the insurer, excuse me, for the insured. And in this, I got focused on the fact that, well, you've got two insurers. You've got an insurer siding with the insured going after the excess carrier, and I'm trying to figure out, okay, is the insured really coming out of this best of all, or is this just good for this one ticket only, because it works to their advantage in this particular case. And this flows from the contract concept that ambiguity or confusion against the drafter. It's not to maximize the benefits of the insured, and I think that's really what is being sewn into this by knowledge, that they should be protected that way, and I would submit that that is not how the third prong would apply. We would respectfully request that the district court be reversed. Thank you. Okay. Thank all sides. However this comes out, I want you to tell your clients you've all earned your money today. Knowledge Learning Corporation versus National Union Fire Insurance submitted, and we're adjourned for the day.
judges: Fletcher, Fisher, Bybee